2026 IL App (1st) 241133-U

No. 1-24-1133

Order filed July 16, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | Nos. 08 CR 109901 & |
| | ) | 08 CR 109910 |
| SWAYSEY RANKIN, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Thomas J. Byrne, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justices Ocasio and Quish concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant made a substantial showing at the second stage of postconviction proceedings that he received ineffective assistance of counsel during plea negotiations. Reversed and remanded.

¶ 2    Defendant, Swaysey Rankin, appeals from the second stage dismissal of his postconviction petition alleging ineffective assistance of counsel. For the following reasons, we reverse and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4      In 2008, Rankin was indicted in two cases. In the first case, he was charged with attempted first degree murder, home invasion, and aggravated discharge of a firearm, arising from events that occurred on May 3, 2008. In the second case, he was charged with attempted first degree murder, aggravated battery with a firearm, aggravated kidnapping, aggravated battery, and home invasion, arising from events that occurred on May 9, 2008. The State moved to join the cases, and the trial court granted the motion.

¶ 5      In June 2010, defense counsel told the court that the State had made a plea offer, and that he would have to visit Rankin and discuss it with him. In August 2010, defense counsel informed the court that the State had "officially revoked its offer."

¶ 6      On January 9, 2012, the State indicated it "tendered an offer to the defendant for 40 years. That is 31 years consecutive to 9 years on the two cases. The defendant, it's my understanding, has rejected that offer." Defense counsel, a different one from the 2010 court dates, noted that she had a lengthy discussion with Rankin and that he did not want to take that offer. The court asked about how the State had chosen 40 years, to which the State explained it would amend the charges to reduce one of the charges. The court then explained to Rankin that at 85 %, Rankin would spend, at a minimum, 34 years in prison if he took the 40-year plea offer. The court stated that if Rankin was found guilty of each of the charges against him, the mandatory minimum sentence it could impose would be 119 years. Served at 85 %, that would be a minimum of 101 years in prison.

¶ 7      Rankin then stated, "Your Honor, can I ask you a question?" The court said yes and the following colloquy occurred:

"THE DEFENDANT: A while back I had got offered 21 years at 85 percent and the State rejected they offer. I was never aware of how much time I was facing.

THE COURT: Let me ask you – I think I misunderstood you or didn't hear you right. You told them if they gave you 21 years, you would plead guilty?

THE DEFENDANT: No, this was they [*sic*] offer.

THE COURT: Is that right?

[THE STATE]: That is correct.

THE COURT: When was that?

[THE STATE]: It was an offer of 21 years and it was revoked after – it was a one day offer and the defendant rejected it.

THE COURT: How could you make an offer of 21 years? Again, by striking the enhancement?

[THE STATE]: Correct. And it was revoked and it's no longer an option.

THE COURT: Go ahead. I interrupted you. Go ahead and finish.

THE DEFENDANT: And they had revoked it on the record. At that time I was never known how much time I was facing nor was it broke down to me at this time. Quite naturally I would have took the 21 years if I was [going to] plead guilty.

THE COURT: Who was representing you then?

THE DEFENDANT: Victor.

THE COURT: Victor?

[DEFENSE COUNSEL]: Mr. Erbring, Judge. I haven't talked to Mr. Erbring about this matter. He mentioned this to me as well on Friday about the original offer of 21 years, but I told him as long as I have been on this case, which was only a few months, it's been 40.

THE COURT: Why don't we pass it and you two talk, okay? And see what you can figure out about what Victor did and didn't do.

[THE STATE]: Judge, I clearly remember the day I made the offer and obviously I wouldn't have been a party to the conversation with the defendant, but I did inform Mr. Erbring what the mandatory minimum was when that offer was made. And it was miscalculated. The mandatory minimum was miscalculated, but it was still a lot higher than 21 years.

And keeping to my word, I left the offer open that day, even after the State realized it was an offer that we would have to make great amendments to because it was essentially an illegal offer and it would have been void in any court if it had not been amended.

Victor did go back and talk to the defendant, came out and indicated to me that he advised the defendant of what his mandatory minimum was and the defendant rejected the offer."

¶ 8    The court then told Rankin that a rejected offer could not be brought back up.

¶ 9    In April 2012, Rankin filed a motion to compel the State to resubmit the prior plea offer of 21 years. The motion was brought by both his current defense counsel and his former defense counsel, Erbring. It stated that Rankin was not properly advised as to the potential sentence he faced if convicted of all counts. It further stated that "[b]oth of his attorneys were unclear as to the

full extent of the potential sentences available against him were he to be convicted" and that "[b]ased on the ineffective advice previously given to the defendant, he chose to reject these offers of a negotiated disposition." It alleged that Rankin was in a worse position than he would have "had he had effective assistance during plea negotiations." The motion was never ruled on.

¶ 10    On August 22, 2012, the State noted that it reduced its plea offer to 36 years, but that Rankin rejected the offer. Defense counsel then stated that when Erbring was on the case, there was an offer of 21 years and "Rankin still has a number around there in his head."

¶ 11    On October 4, 2012, the State offered Rankin 26 years.

¶ 12    In January 2013, the parties negotiated a plea agreement with Rankin pleading guilty to one count of attempted first degree murder in each case in exchange for concurrent sentences of 26 years in prison. After admonishing Rankin, the judge accepted the guilty plea.

¶ 13    At the sentencing hearing, Rankin indicated he wanted to withdraw his guilty plea. The court told him he would first have to let this "play out." The court then sentenced Rankin to two concurrent sentences of 26 years in prison.

¶ 14    In 2015, Rankin filed a *pro se* postconviction petition challenging his guilty plea. The court advanced the petition to the second stage and appointed Rankin counsel.

¶ 15    In 2022, Rankin's attorney filed a second-amended postconviction petition alleging that trial counsel was ineffective for failing to accurately advise Rankin about the sentencing range in his case. The petition alleged that trial counsel admitted to giving defense counsel the wrong sentencing range, and that Rankin was prejudiced because, but for that ineffective advice, he would have taken the 21-year plea offer. Attached to defendant's postconviction petition was his affidavit stating that the second-amended postconviction petition was true and correct to the best of his

knowledge. He also attached several transcripts from 2010, 2012, and 2013, wherein he, his counsel, and the State discussed plea negotiations.

¶ 16     The State filed a motion to dismiss Rankin's petition, arguing that Rankin had not shown that he would have accepted the plea offer, and therefore did not show prejudice.

¶ 17     The court, in a written order, assumed Rankin had shown deficient performance and addressed only prejudice. It concluded that the petition did not make a substantial showing that Rankin would have accepted the plea deal. The court granted the State's motion to dismiss. Rankin filed a motion to reconsider. At the hearing on the motion to reconsider, the State admitted that it "had informed defense counsel of an incorrect sentencing range," and that defense counsel misunderstood the sentencing range "based on representations that were made by the State." The court denied Rankin's motion to reconsider, and he now appeals.

¶ 18                                   II. ANALYSIS

¶ 19     On appeal, Rankin contends that he made a substantial showing at the second stage of postconviction proceedings that he received ineffective assistance of plea counsel when counsel failed to advise him of the correct sentencing range.

¶ 20                                   A. Waiver

¶ 21     As an initial matter, the State contends that Rankin has waived this argument by pleading guilty and for failing to move to withdraw his guilty plea. Illinois Supreme Court Rule 604(d) states that "[n]o appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court, *** a motion to withdraw the plea of guilty and vacate the judgment." Ill. S. Ct. R. 604(d) (eff. April 15, 2024). As a general rule, the failure to timely file a Rule 604(d) motion "precludes the appellate court from considering the appeal on the merits." *People v. Flowers*, 208 Ill. 2d 291, 301 (2003).

"Where a defendant has failed to file a written motion to withdraw his plea of guilty *** the appellate court must dismiss the appeal, leaving the Post-Conviction Hearing Act as the defendant's only recourse." (Citations omitted). *Id*. Here, no direct appeal was taken, presumably due to Rankin's withdrawal of his motion to withdraw his guilty plea. Rankin then filed a postconviction petition alleging ineffective assistance of plea counsel, which is an exception carved out of the waiver rule that the State explicitly recognized in its brief. See *People v. Kimmons*, 2022 IL App (2d) 180589, ¶ 38 ("There are exceptions to the guilty plea waiver rule as applied to postconviction claims"; "The rule does not apply where a defendant claims his or her plea was involuntary because plea counsel provided deficient advice."). Our supreme court has reviewed ineffective assistance of plea counsel claims in similar circumstances, with no discussion of waiver. See *People v. Brown*, 2017 IL 121681 (defendant did not file a motion to withdraw guilty plea, then filed a postconviction petition alleging ineffective assistance of plea counsel for incorrectly advising him of sentencing issues; the supreme court addressed the merits of the petition, with no discussion of waiver); *People v. Hall*, 217 Ill. 2d 314 (2015) (defendant withdrew his motion to withdraw his guilty plea after pleading guilty, then filed a postconviction petition alleging ineffective assistance of plea counsel for failing to advise him correctly regarding his sentence; the supreme court addressed the merits of the petition without reference to waiver).

¶ 22     The State contends, however, that because Rankin entered into a plea deal where he was properly admonished, any challenge to the prior offer that he rejected has been waived. We disagree. In *People v. Owsley*, 66 Ill. App. 3d 234, 236 (1978), the petitioner had been fully and properly admonished by the trial court when she entered into a plea deal. Nevertheless, she claimed in a postconviction petition that her trial counsel had incorrectly advised her before the plea deal that she would be eligible for parole in five years, would be eligible for weekend furloughs within

one year, and would be eligible for work release within one year. *Id*. The appellate court found that even though the petitioner was properly admonished during her plea deal, she had been previously misled by her attorney and "[c]ertainly a defendant ought not to be misled, in any way, into entering a plea of guilty." *Id*.

¶ 23    In the case at bar, Rankin alleged in his postconviction petition that he was misled by his attorney when he was given an incorrect sentencing range during plea negotiations. His rejection of a plea deal, based on allegedly incorrect advice, ultimately led to his acceptance of a different plea deal. Accordingly, just as in *Owsley*, Rankin was not foreclosed from bringing an ineffective assistance of counsel claim based on plea counsel's misleading information during plea negotiations that caused him to reject a favorable plea offer before later entering into a plea deal where he had been properly admonished.

¶ 24                            B. Ineffective Assistance of Counsel

¶ 25    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122 *et seq*. (West 2024)) is a "legislative creation" that allows an incarcerated defendant to assert a substantial violation of his constitutional rights at trial. *People v. Bailey*, 2017 IL 121450, ¶ 17. A postconviction proceeding does not substitute for a direct appeal but instead "offers a mechanism for a criminal defendant to assert a collateral attack on a final judgment." *People v. Robinson*, 2020 IL 123849, ¶ 42. "The purpose of a postconviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, and could not have been, adjudicated previously on direct appeal." *People v. English*, 2013 IL 112890, ¶ 22.

¶ 26    Proceedings under the Act are divided into three stages. At the first stage, the trial court may dismiss the petition if it is "frivolous or *** patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2024). A petition is frivolous or patently without merit if it has no arguable basis either in

- 8 -

law or fact. *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). If the trial court does not dismiss the petition, it advances to the second stage where the court may appoint counsel to represent the defendant. 725 ILCS 5/122-2.1(b) (West 2024); *Bailey*, 2017 IL 121450, ¶ 18.

¶ 27    At the second stage, the defendant must make a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 33. Such a showing is made when the petition's well-pled allegations, if proven at an evidentiary hearing, would entitle the defendant to relief. *Id*. ¶ 35. The trial court does not engage in fact-finding or credibility determinations at this stage; rather, all well-pled facts not positively rebutted by the original trial record are taken as true. *Id*.

¶ 28    If the petition fails to make a substantial showing of a constitutional violation, it is dismissed. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). If it is not dismissed, it advances to the third stage, where the circuit court conducts an evidentiary hearing. *Id*. At the third stage, the court functions as the fact finder by determining witness credibility and resolving conflicts in the evidence. *Domagala*, 2013 IL 113688, ¶ 34.

¶ 29    Here, the trial court granted the State's motion to dismiss the petition at the second stage. The dismissal of a postconviction petition without an evidentiary hearing is reviewed *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31. The question raised in an appeal from an order dismissing a postconviction petition at the second stage is whether the allegations in the petition, liberally construed in favor of the petitioner and taken as true, are sufficient to invoke relief under the Act. *Id*. The second stage of postconviction proceedings tests only the legal sufficiency of the petition. *Domagala*, 2013 IL 113588, ¶ 35.

¶ 30    A defendant's claim of ineffective assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, "a defendant must show both that counsel's performance was deficient and that the deficient

performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). To establish deficient performance, the defendant must show that his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219 (2004). A "defendant establishes prejudice by showing that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different." *People v. Houston*, 229 Ill. 2d 1, 4 (2008). A "reasonable probability" has been defined as a probability which would be sufficient to undermine the confidence in the outcome of the trial. *Id*. "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35.

¶ 31 A defendant's sixth amendment (U.S. Const., amend. VI) right to effective assistance of counsel applies to plea negotiations. *People v. Hale*, 2013 IL 113140, ¶ 15. A defendant has a constitutional right to elect what plea to enter (*People v. Williams*, 2016 IL App (4th) 140502, ¶ 33) and to be reasonably informed as to the direct consequences of accepting or rejecting a plea offer (*Hale*, 2013 IL 113140, ¶ 16). Counsel's performance is deficient if counsel fails to ensure that a defendant accepts or rejects a plea offer voluntarily or intelligently. *People v. Marcus*, 2023 IL App (2d) 220096, ¶ 61. To establish prejudice where a plea offer was rejected because of counsel's deficient performance, a defendant must demonstrate a reasonable probability that he would have accepted the plea offer absent his attorney's deficient advice. *Hale*, 2013 IL 113140, ¶ 18. Additionally, a defendant must demonstrate a reasonable probability that the plea would have been entered without the prosecution withdrawing it or the trial court refusing to accept it. *Id*. ¶¶ 19-20. "The disparity between the sentence a defendant faced and a significantly shorter plea offer can be considered supportive of a defendant's claim of prejudice." *Id*. ¶ 18.

¶ 32     Here, Rankin's postconviction petition made a substantial showing that his plea counsel was deficient for failing to ensure that he accepted or rejected the plea offer voluntarily or intelligently. *Marcus*, 2023 IL App (2d) 220096, ¶ 61 (counsel's performance is deficient if counsel fails to ensure that a defendant accepts or rejects a plea offer voluntarily or intelligently). The decision to plead guilty can only be an intelligent one if the defendant has been fully advised as to the probable outcomes of the alternative choices, and counsel "should inform the defendant of the maximum and minimum sentence that can be imposed." *People v. Blommaert*, 237 Ill. App. 3d 811, 817 (1992). Attached to Rankin's second-amended postconviction petition were transcripts wherein the State admitted that it had provided Rankin's attorney with a miscalculated mandatory minimum sentence when it made the offer of 21 years. This is supported by an April 2012 motion, brought by both his counsel at the time, as well as his counsel at the time of the plea offer at issue, that stated, "[b]oth of his attorneys were unclear as to the full extent of the potential sentences available against him were he to be convicted," and that they provided "ineffective advice." Accordingly, we find that Rankin made a substantial showing that his plea counsel was ineffective for failing to accurately inform Rankin of the minimum and maximum sentences that he was facing if convicted.

¶ 33     We find that in addition to making a substantial showing that his plea counsel was deficient, Rankin also made a substantial showing that the deficiency prejudiced him by demonstrating a reasonable probability that (1) the plea would have been entered without the prosecution withdrawing it or the trial court refusing to accept it, and (2) he would have accepted the plea offer absent his attorney's deficient advice. *Hale*, 2013 IL 113140, ¶¶ 18-20. As the circuit court noted, the State asserted on the record that it left the 21-year offer open that day, even after the State realized it was an offer that "we would have to make great amendments to because it was

essentially an illegal offer and it would have been void in any court if it had not been amended." Accordingly, Rankin made a substantial showing that he was prejudiced by demonstrating that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it.

¶ 34     Rankin also demonstrated a reasonable probability that he would have accepted the plea if his counsel had given the correct minimum and maximum sentences that he was facing. *Hale*, 2013 IL 113140, ¶ 18 (to establish prejudice where a plea offer was rejected because of counsel's deficient performance, a defendant must demonstrate a reasonable probability that he would have accepted the plea offer absent his attorney's deficient advice). According to the transcripts that were attached to Rankin's second-amended postconviction petition, Rankin explained to the court that when he rejected the 21-year plea deal, he had "never known how much time I was facing." He further stated, "Quite naturally I would have [taken] the 21 years if I was [going to] plead guilty." Taking Rankin's well-pled allegations in the petition as true, and finding support for them in the record, we are compelled to find that he made a substantial showing that he was prejudiced by his plea counsel's deficient performance.

¶ 35     We find *Williams*, 2016 IL App (4th) 140502, to be supportive. In that case, the defendant argued in a postconviction petition that as a result of his trial counsel's failure, he rejected the State's 18-year guilty-plea offer and, instead, proceeded to trial where a jury found him guilty of attempted first degree murder, unlawful use of a weapon by a felon, and attempted robbery. *Id*. ¶ 1. He was sentenced to 45 years in prison. *Id*. In his postconviction petition, the defendant alleged that his counsel never told him that one of his charges was a truth-in-sentencing crime that had to be served at 85 %. *Id.* ¶ 6. The court granted the State's motion to dismiss the defendant's petition at the second stage, finding that the defendant failed to demonstrate how his counsel's

representation fell below the objective standard of reasonableness and how it prejudiced him. *Id.* ¶ 8. On appeal, the court found that the defendant's petition contained well-pled facts that alleged a substantial constitutional violation, and therefore "the court must advance the postconviction petition to the third stage of postconviction proceedings for an evidentiary hearing." *Id.* ¶ 44.

¶ 36    Here, we not only have well-pled facts in Rankin's petition, but generous support for those facts in the record. While, as the court in *Williams* noted, postconviction challenges based on a claim that a defendant was denied his constitutional right to effective assistance of counsel during guilty-plea negotiations "are almost always based on matters that occur *de hors* the record," here, we have transcripts of Rankin stating on the record that he would have taken the 21-year plea deal if he had known the sentencing range he was facing, as well as transcripts and pleadings wherein plea counsel admitted to giving deficient advice. See *Williams*, 2016 IL App (4th) 140502, ¶ 44.

¶ 37    Accordingly, we find that Rankin made a substantial showing in his second-stage postconviction petition that he received ineffective assistance of plea counsel. We reverse and remand with directions that the court (1) permit the State to answer defendant's postconviction petition pursuant to section 122-5 of the Act (725 ILCS 5/122-5 (West 2024)) and (2) conduct a third-stage evidentiary hearing pursuant to section 122-6 of the Act (725 ILCS 5/122-6 (West 2024)).

¶ 38                                III. CONCLUSION

¶ 39    For the foregoing reasons, we reverse the judgment of the circuit court of Cook County, and remand with directions.

¶ 40    Reversed and remanded with directions.